David A. Lane
Killmer, Lane & Newman, LLP
1543 Champa Street
Denver, Colorado  80202
Email:  dlane@kln-law.com
303-571-1000

Gregory C. Sisk
Appellate Clinic
University of St. Thomas School of Law
1000 LaSalle Ave., MSL 400
Minneapolis, MN  55403
Minnesota Attorney ID. 396928
Email:  gcsisk@stthomas.edu
651-962-4923

*Attorneys for Plaintiff*
  *Scott D. Nordstrom*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Douglas Nordstrom, | No.: CV11-2344-PHX-DGC (MEA) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE EXPENSES AND MEMORANDUM IN SUPPORT** |
| Charles L. Ryan, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.     Introduction and Summary ...................................................................1

II.    Eligibility ............................................................................................4

III.   Entitlement .........................................................................................4

IV.    Reasonableness and Proportionality of Fee Request ............................5

       (a)  The Hours Requested are Reasonable and Proportionate ............................8

       (b)  Hourly Rates Requested are Reasonable and Have Been Reduced
            Below Market Rates Pursuant to the Prison Litigation Reform Act.............9

       (c)  Other Factors Confirm the Reasonableness and Proportionality of the
            Requested Award ..................................................................................12

            *Time and labor required of counsel* ...........................................................12

            *The novelty and difficulty of the questions presented* .................................13

            *Amount of money, or value of the rights, involved, and the results
            obtained* ..........................................................................................13

            *Experience, reputation, and ability of counsel* ...........................................14

            *The "undesirability" of the case* .................................................................14

            *Awards in similar actions* .......................................................................15

V.     Recovery for Non-Taxable Expenses/Costs...........................................16

VI.    Conclusion.........................................................................................17

1

## TABLE OF AUTHORITIES

2

### Cases

3

*Arevalo v. Castro*, No. 3:15-cv-00407, 2017 WL 4532150 (D. Nev. Oct. 10, 2017).................................................................................................................9

*Balla v. Idaho St. Bd. of Corrections*, No. CV-81-1165, 2016 WL 6762651 (D. Idaho, Feb. 1, 2016)..................................................................................7

*Carruthers v. Israel*, No. 76-06086, --- F. Supp. 3d ---, 2017 WL 3531471 (S.D. Fla. Aug. 15, 2017).................................................................................9

*Chalmers v. City of Los Angeles*, 796 F.2d 1015 (9th Cir. 1986) ...............................16

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ........................................................13

*Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004) .................15

*DePriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-00663, 2017 WL 4228751 (S.D. Miss., Sept. 22, 2017) ................................................................10

*Farrar v. Hobby*, 506 U.S. 103 (1992) ..........................................................................4

*Gonzalez v. City of Maplewood*, 729 F.3d 1196 (9th Cir. 2013)...................................4

*Graves v. Arpaio*, 633 F. Supp. 2d 834 (D. Ariz. 2009)................................... 3, 4, 5, 9

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994).........................................................16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................5

*In re Washington Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...............................................................................................................11

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ..................................................... 6, 7

*McGrath v. County of Nevada*, 67 F.3d 248 (9th Cir. 1995).........................................5

*Maher v. Gagne*, 448 U.S. 122 (1980) ..........................................................................3

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ..........................................................................3

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ............................................................. 11, 16

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009)......................................................15

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ...........................................................5

*Ryals v. City of Englewood*, No. 12-cv-02178, 2014 WL 2566288 (D. Colo.
        June 6, 2014).........................................................................................................10

*State v. ASARCO LLC*, No. CV 08–441 TUC–MWB, 2011 WL 6951842 (D.
        Ariz. Sept. 29, 2011) ...........................................................................................11

*Webb v. Ada County*, 285 F.3d 829 (9th Cir. 2002) ................................................. 4, 9

*Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942 (9th Cir. 2007) ...........................11

*Yamada v. Snipes*, 786 F.3d 1182 (9th Cir. 2015).........................................................4

## Statutes and Rules

42 U.S.C. § 1983............................................................................................... 2, 4, 16

42 U.S.C. § 1988................................................................................................... 1, 3

42 U.S.C. § 1988(b)...................................................................................................4

42 U.S.C. § 1997e(d)(1) ..................................................................................... 1, 3, 4

42 U.S.C. § 1997e(d)(1)(B)(i) ...................................................................................5

42 U.S.C. § 1997e(d)(3) ............................................................................................9

Local Rule 54.2...........................................................................................................1

Local Rule 54.2(c)(3)................................................................................................12

Local Rule 54.2(d) ......................................................................................................1

Ninth Circuit Rule 36-2 ............................................................................................13

1

**Other Authorities**

2

H.R. Rep. No. 104-21 (Feb. 6, 1995) ............................................................4

The Judiciary FY 2017 Congressional Budget Summary (2016) ..................9

U.S. Court of Appeals, *Pro Bono Program (Handbook)* (2012)...................3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.      Introduction and Summary

Pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 1997e(d)(1), Rule 54(d) of the Federal Rules of Civil Procedure, and Local Rule 54.2, Plaintiff Scott Nordstrom moves the Court for an award of attorney's fees and non-taxable costs or expenses in this case.  A proposed order is attached.  Affidavits by Gregory C. Sisk and David A. Lane, with supporting documentation required under Local Rule 54.2(d), are being filed simultaneously with this motion.

Plaintiff respectfully requests an award of attorney's fees and non-taxable costs for the legal work performed by attorneys David A. Lane and Gregory C. Sisk[1] and by Certified Law Student Representatives at the University of St. Thomas.  The amount sought reflects fees and expenses incurred for the first appeal of *Nordstrom v. Ryan*, No. 12-15738 (9th Cir.), the second appeal of *Nordstrom v. Ryan*, No. 16-15277, and on the two remands to this Court, as well as fees for preparing the motion for attorney's fees and supporting documentation.

Plaintiff requests an award of attorney's fees and related non-taxable expenses in the amount of **$226,251.12**, broken down as:

- $40,602.60 in legal fees and $640.20 in expenses for a total award of **$41,242.80** payable to David A. Lane;

---

[1]      Although employed by the University of St. Thomas as a law professor, Sisk undertook this pro bono work in his own professional capacity, volunteering his own time to supervise law students in an Appellate Clinic, not as part of his regular teaching assignments and without university compensation.  By arrangement, any award of attorney's fees for Sisk's individual time expended in this case should be paid one-third (1/3) to the University of St. Thomas and two-thirds (2/3) to Sisk individually.  The amount requested in this motion, as broken down, specifies that division.  Any award for work performed by Certified Law Student Representatives, who received academic credit for this work and thus under then-existing accreditation rules may not be compensated individually for that time, is payable in whole to the university.

Plaintiff's Motion for Attorney's Fees and Expenses - 1

● $110,671.65 in legal fees for work performed by Gregory C. Sisk, of which one-third or $36,890.55 is payable to the University of St. Thomas (as noted below and explained in footnote 1); and of which two-thirds or $73,781.10 is payable to Sisk individually, resulting in a total award with $436.17 in expenses of **$74,217.27** payable to Gregory C. Sisk; and

● $68,182.70 in legal fees for Michelle King, Joy Nissen Beitzel, Bridget Duffus, and Katherine Koehler; one-third of Sisk's time or $36,890.55 (as noted above); and $5,717.80 in non-taxable expenses for a total award of **$110,791.05** payable to the University of St. Thomas.

Below is a summary chart of the hours provided in legal services and the appropriate hourly rates by each counsel or representative:

| Name | Total Hours | Current Market Rate | Current PLRA Base Rate | Multiplier Lane: 2.0 Sisk: 1.5 | Total |
|------|-------------|---------------------|------------------------|-------------------------------|-------|
|      |             |                     |                        |                               |       |
| David A. Lane | 92.7 | $550 | $219 | $438 | $40,602.60 |
| Gregory C. Sisk | 336.9 | $350 | $219 | $328.50 | $110,671.65 |
| Michelle King | 130.7 | $181 | N/A | N/A | $23,656.70 |
| Joy Nissen | 84.6 | $181 | N/A | N/A | $15,312.60 |
| Bridget Duffus | 94.8 | $181 | N/A | N/A | $17,158.80 |
| Katherine Koehler | 66.6 | $181 | N/A | N/A | $12,054.60 |
|      | 806.3 |      |      |      | $219,456.95 |

Plaintiff's Motion for Attorney's Fees and Expenses - 2

1    Plaintiff's request is fully consistent with the purpose of 42 U.S.C. § 1988 that fee

2    awards be "an integral part of the remedies necessary to obtain compliance with §

3    1983." *Maine v. Thiboutot*, 448 U.S. 1, 112 n.12 (1980) (quotation omitted); *see also*

4    *Maher v. Gagne*, 448 U.S. 122, 127 n.9 (1980) ("a fee award furthers the Congres-

5    sional goal of encouraging suits to vindicate constitutional rights;" quotation omitted).

6    The request also is consistent with the purposes of the Prison Litigation Reform Act

7    (PLRA), which authorizes an award when "the fee was directly and reasonably

8    incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. §

9    1997e(d)(1); *see generally Graves v. Arpaio*, 633 F. Supp. 2d 834, 843-45 (D. Ariz.

10   2009).

11   For both appeals, the Ninth Circuit directed that "appointment of pro bono

12   counsel in this appeal would benefit the court's review" and subsequently appointed

13   Gregory C. Sisk as counsel.[2]  See Affidavit of Gregory C. Sisk ¶3, Exhs. A & B

14   [hereinafter "Sisk Aff."].   Under the Ninth Circuit's pro bono program, "Attorneys'

15   fees and certain costs are available to prevailing pro bono counsel under applicable

16   statutes and rules to the same extent as retained counsel."  U.S. Court of Appeals, *Pro*

17   *Bono Program (Handbook)* at 8 (2012).

18   As stipulated by the parties, Plaintiff prevailed by obtaining the relief sought in

19   the complaint, an injunction against the practices of the Arizona Department of

20   Corrections (ADC) from intruding into the substantive content of his correspondence

21   with his legal counsel.  Plaintiff thus is eligible and entitled to the requested award,

22   which is reasonable in amount for the representation provided.

23

24

25   _____

26   [2]    Dustin Buehler was appointed as co-counsel on the first appeal, but in the
     exercise of billing judgment, no fees or expenses are being sought for his work.

Plaintiff's Motion for Attorney's Fees and Expenses - 3

## II.    Eligibility

Section 1988(b) of Title 42 provides "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  The parties agreed in the Stipulated Judgment that Plaintiff Nordstrom had prevailed in this litigation.  Doc. 102 at 2.

The triggering event is the entry of "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement."  *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  In *Yamada v. Snipes*, 786 F.3d 1182, 1210 (9th Cir. 2015), the Ninth Circuit confirmed that when a party subsequently becomes a prevailing party after the District Court enters a judgment in the party's favor, the District Court should award attorney's fees, including reasonable fees for work performed on a prior appeal.

## III.    Entitlement

Under the PLRA, a plaintiff is entitled to fees after "proving an actual violation of the plaintiff's rights."  42 U.S.C. § 1997e(d)(1).  *See generally Webb v. Ada County*, 285 F.3d 829, 834-35 (9th Cir. 2002).  While the PLRA "eliminates the financial incentive for prisoners to include numerous non-meritorious claims in sweeping institutional litigation, it retains the financial incentive to bring lawsuits properly focused on prison conditions that actually violate federal law."  H.R. Rep. No. 104-21 at 28 (Feb. 6, 1995); *see Graves*, 633 F. Supp. 2d at 844.

Plaintiff is also entitled to an award of fees for preparing the application for fees.  "[I]t's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable."  *Gonzalez v. City of Maplewood*, 729 F.3d 1196, 1210 (9th Cir. 2013).  As a further exercise of billing judgment and in compromise, we

1  suspended the running of the clock on this matter as of October 30, 2017, thus not

2  including time spent consulting with Defendant's counsel and preparing the final

3  documents for this fee application.  However, should this fee application be resisted

4  and additional time be expended in litigating this fee application, Plaintiff reserves the

5  right to supplement the motion to seek compensation for that additional time.

6

7  **IV.    Reasonableness and Proportionality of Fee Request**

8          "When a plaintiff has obtained excellent results, his attorney should recover a

9  fully compensatory fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  Plaintiff

10  achieved the injunctive relief he requested in his complaint.  Through the Ninth

11  Circuit's two precedential opinions on the constitutional rights of prisoners to

12  confidential correspondence with their counsel, the representation also achieved broad

13  public benefit.  The Arizona Department of Corrections will be revising the general

14  legal mail policy and has assured this Court it will be complying with the Ninth

15  Circuit's precedent.  Doc. 98 at 3.  "In determining the extent of a plaintiff's success, a

16  district court should consider significant nonmonetary results achieved not only for the

17  plaintiff, but for other members of society."  *Graves*, 633 F. Supp. at 843.  The hours

18  worked and the amount of the fee requested "is proportionately related to the court

19  ordered relief for the [constitutional] violation."  *See* 42 U.S.C. § 1997e(d)(1)(B)(i).

20          Plaintiff's counsel has calculated this fee request according to the lodestar

21  method, that is, by multiplying the number of hours reasonably expended by a

22  reasonable hourly rate.  *See, e.g.*, *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th

23  Cir. 1995) (explaining method).  The lodestar method is *strongly presumed* to be

24  reasonable.  *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992).  We have

25  significantly reduced the hours requested by the exercise of billing judgment, and the

26  hourly rate for the two attorneys has been adjusted below market rates to the current

PLRA base rate plus a multiplier for all hours worked as compensation for delay in payment.

Pursuant to *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016), we ask for a 2.0 multiplier for David A. Lane and for a 1.5 multiplier for Sisk from the current PLRA rate of $219 per hour. In *Kelly*, the Ninth Circuit approved 2.0 and 1.3 multipliers in a prison litigation case with counsel who accepted a court appointment as pro bono counsel. The multiplier was approved on two alternate grounds: (1) superior performance, and (2) enhancement of the low PLRA rate to provide an incentive in the future for private attorneys to accept prisoner civil rights cases where only declaratory or injunctive relief is sought. *Id.* at 1100-1105.

*First*, we submit that the record in both this Court and the Ninth Circuit confirms that counsel for plaintiff Nordstrom provided superior performance, "as compared to the run-of-the-mill representation in such cases." *See id.* at 1103.

For counsel David Lane, we ask for a multiplier of 2.0, bringing the hourly rate from the PLRA base of $219 to $438. Generously stepping in when no other trial attorney had been willing to represent Nordstrom at the evidentiary hearing on the request for a preliminary injunction, Lane established an indispensable record, without which the second appeal before the Ninth Circuit may well not have been successful. Through his award-winning experience as one of the premier civil rights attorneys in the country and his expertise as a trial attorney, Affidavit of David A. Lane ¶¶4, 8 [hereinafter "Lane Aff."], Lane developed a testimonial record of the ADC's intrusive practices into legal mail, the absence of any episode of abuse of legal mail at the prison, and the readily available alternative of checking the accuracy of the address to the lawyer. And he achieved this "under extreme time pressure," *see id.* at 1093, by appearing in the courtroom for a hearing already scheduled.

1    For counsel Gregory Sisk, we ask for a multiplier of 1.5, bringing the hourly rate

2    from the PLRA base of $219 to $328.50.  Sisk undertook the daunting task of twice

3    asking for appellate reversal of adverse District Court decisions, on the second

4    occasion from a published District Court decision with conclusions of law and findings

5    of fact.  Arguing two primary constitutional grounds, Sisk also had to respond to a

6    plethora of ADC arguments ranging from every kind of justiciability challenge

7    (including standing to assert two constitutional rights, mootness, and law of the case

8    on standing) to disputes about the degree of intrusiveness of the ADC inspection and

9    on to assertions of necessity for prison security.  With Sisk's representation,

10   Nordstrom prevailed on every point on appeal, with the Ninth Circuit holding in the

11   Plaintiff's favor on standing and through to the merits of both the Sixth and First

12   Amendment theories.

13       *Second*, just as the Ninth Circuit highlighted in *Kelly*, 822 F.3d at 1093, but for

14   Lane's willingness to step in at the evidentiary hearing and for Sisk's acceptance of a

15   pro bono appointment by the court, a prisoner like Nordstrom who is not seeking

16   damages was unlikely to attract representation — and indeed had failed to do so before

17   Sisk's appointment.  By sworn declaration, Kathleen E. Brody, Legal Director of the

18   ACLU of Arizona, testifies that very few lawyers in Arizona have the degree of

19   experience and willingness and resources to litigate a case like *Nordstrom v. Ryan*

20   seeking only injunctive relief.  Sisk Aff. Exh. R.  Sisk also testifies from his

21   experience in representing prisoners in Arizona and elsewhere in the Ninth Circuit that

22   even prisoners with the most meritorious of claims cannot find legal representation in

23   the current private market.  Sisk Aff. ¶¶27-28.  In such cases, the PLRA rate is

24   "insufficient to induce competent attorneys to accept appointment" and thus is "by

25   definition not a reasonable fee."  *Kelly*, 822 F.3d at 1104; *see also Balla v. Idaho St.*

26   *Bd. of Corrections*, No. CV-81-1165, 2016 WL 6762651, at *13 (D. Idaho, Feb. 1,

2016) (finding based on declarations that "prisoners who seek counsel for injunctive relief lawsuits face significant difficulty in finding such counsel"). The award of a multiplier here may encourage members of the private bar to undertake such cases in the future.

### (a)    The Hours Requested are Reasonable and Proportionate

Plaintiff's requested hours are reasonable for a complex legal matter of this nature and importance, involving as it did multiple questions, ranging from standing to the content of prisoner constitutional rights to the special circumstances of death row inmates challenging conviction. The Court presided over the evidentiary hearing and reviewed the evidentiary submissions on the first remand, knowing first-hand of the quality of the representation for Nordstrom. The Court's 20-page published opinion, as well as the rulings on many other matters along the way, demonstrate the nature of the case. The opening and reply briefs for both appeals, available on the dockets of the Ninth Circuit for appeal Nos. 12-15738 and 16-15277, illustrate the complexity of the appeals, the quality of the representation, and the significance of the matter.

David Lane maintained contemporaneous records of legal work provided, including the specific tasks performed. Lane Aff. ¶¶15-16. These time records are attached to his accompanying affidavit. Lane Aff. Exh. B.

As the attorney primarily responsible for the appeals, Gregory Sisk maintained contemporaneous records of his time worked on the case and the specific tasks performed. Those time records are attached to his affidavit as Exhibit J. Certified Law Student Representatives Michelle King, Joy Nissen Beitzel, Bridget Duffus, and Katherine Koehler also maintained contemporaneous records, which have been reviewed and approved by Sisk, attached to his affidavit as Exhibits K through N.

1    While Sisk was appointed by the Ninth Circuit as pro bono counsel on the appeals

2    and Lane entered the case as pro bono counsel, the billing records presented here and

3    the fees requested reflect the same exercise of billing judgment that would apply were

4    a client being billed directly for these fees.  Sisk Aff. ¶20; Lane Aff. ¶15.  For

5    example, in the exercise of billing judgment, Plaintiff does not seek compensation for

6    nearly one-quarter (24.8 percent) of the hours expended by Sisk, including time spent

7    in attracting and communicating with amicus curiae on appeal, travel time, and moot

8    court practices beyond an initial and final moot court.  Sisk Aff. ¶20.

9

10    **(b)    Hourly Rates Requested are Reasonable and Have Been Reduced
          Below Market Rates Pursuant to the Prison Litigation Reform Act**

11    Plaintiff seeks attorney's fees for the appeal at rates below regular or prevailing

12    market rates.  Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3),

13    the base hourly rate is set at 150% of the hourly rate authorized for payment of court-

14    appointed counsel under the Criminal Justice Act (CJA).

15    The Ninth Circuit has held that the baseline for the PLRA hourly rate is *not* the

16    "rate actually paid to court-appointed counsel" in a district, but rather "the amount

17    authorized by the Judicial Conference."  *Webb*, 285 F.3d at 838-39; *see also Graves*,

18    633 F. Supp. 2d at 854.  While the current CJA rate paid in the District of Arizona is

19    $132, the current rate authorized by the Judicial Conference for the payment of court-

20    appointed counsel is $146 per hour.  *See* The Judiciary FY 2017 Congressional Budget

21    Summary at 37 (2016) (Sisk Aff. Exh. Q).  Accordingly, 150 percent of that rate is

22    $219 per hour.  In District Courts in those circuits following the Ninth Circuit

23    approach, the PLRA base rate for 2017 has been set at $219.  *See, e.g., Arevalo v.*

24    *Castro*, No. 3:15-cv-00407, 2017 WL 4532150, at *3 (D. Nev. Oct. 10, 2017)

25    (awarding PLRA base rate fees at an hourly rate of $219); *Carruthers v. Israel*, No.

26    76-06086, --- F. Supp. 3d ---, 2017 WL 3531471, at *5-7 (S.D. Fla. Aug. 15, 2017)

(same); *DePriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-00663, 2017 WL 4228751 at *10 (S.D. Miss., Sept. 22, 2017) (approving the current PLRA base rate of $219 for all hours billed to compensate for delayed payment).

As set out in his affidavit, David Lane's billing hourly rate is $550.  Lane Aff. ¶12.  Lane and the law firm of Killmer, Lane & Newman have been recognized as Colorado's premier civil rights law firm.  Lane Aff. ¶5.  Lane has tried approximately 200 cases through to a jury verdict in both state and federal courts.  He has argued before the Supreme Court of the United States and in many state and federal appellate courts.  Lane Aff. ¶7.  By written opinion, District Judge Brooke Jackson stated "Mr. Lane is an experienced plaintiffs' civil rights attorney who enjoys a reputation in this community as an able and hard-nosed advocate on behalf of his (often unpopular) clients."  *Ryals v. City of Englewood*, No. 12-cv-02178, 2014 WL 2566288, at *4 (D. Colo. June 6, 2014).  In recent federal litigation, as stated in Lane's affidavit, his hourly rate of $550 was confirmed by the court as reasonable.  Lane Aff. ¶¶12-13. And, as confirmed by a sworn declaration from an Arizona attorney attached to Sisk's affidavit (at Ex. R), Lane's rate comports with the prevailing rate for an attorney of his experience in the Arizona market as well.

Sisk's billing hourly rate is $350.  As detailed in Sisk's affidavit at ¶¶6-9 and his curriculum vitae as Exhibit D, Sisk worked in all three branches of the federal government, including as an appellate specialist in the United States Department of Justice, before entering the legal academy a quarter-of-a-century ago.  He has litigated appeals in ten of the thirteen federal circuits and the Supreme Court, as well as in state appellate courts.  In addition to scholarly work on federal litigation that is regularly cited in the federal courts, he continues to maintain an active practice, primarily by pro bono appellate work.  In recent years, he has submitted three amicus briefs to the Supreme Court and been appointed by the Ninth Circuit as pro bono appellate counsel

1    in eight appeals, seven of which have been completed with five resulting in appellate

2    victories for the prisoner.  He has served on the advisory committees for both the

3    United States District Court for the District of Minnesota and the United States Court

4    of Federal Claims.  As explained in Sisk's affidavit at ¶21-23, his market rate of $350

5    is also confirmed by supporting declarations from Arizona attorneys (Sisk Aff. Exhs. R

6    & S) and by Arizona State Bar statistics for 2013 and 2016 (Sisk Aff. Exhs. O & P).

7           In addition, the Supreme Court has approved compensation for the delay in

8    payment of attorney's fees.  As the Court said in *Missouri v. Jenkins*, 491 U.S. 274,

9    283-84 (1989), "compensation received several years after the services were rendered

10   . . . is not equivalent to the same dollar amount received reasonably promptly as the

11   legal services are performed."  The Ninth Circuit has held that delay in payment may

12   be addressed in two ways: "(1) by applying the attorneys' current rates to all hours

13   billed during the course of litigation; or (2) by using the attorneys' historical rates and

14   adding a prime rate enhancement." *In re Washington Public Power Supply Sys. Secs.*

15   *Litig.,* 19 F.3d 1291, 1305 (9th Cir. 1994); *see Welch v. Metropolitan Life Ins. Co.,* 480

16   F.3d 942, 947 (9th Cir. 2007); *State v. ASARCO LLC*, No. CV 08–441 TUC–MWB,

17   2011 WL 6951842, at *6 (D. Ariz. Sept. 29, 2011).  For ease of application and in

18   billing judgment, we ask for compensation for delay through application of the current

19   PLRA base rate plus multipliers for both Sisk and Lane, as well as the current

20   appropriate hourly rate for the Certified Law Student Representatives.

21          As described in Sisk's affidavit at ¶31, the hourly rate for the four Certified

22   Student Representatives is calculated conservatively at $181, by taking the average of

23   the mean for a paralegal in Arizona from 2013 at $105 (when such information was

24   last available) and the median hourly rate in 2016 for a lawyer with less than five-years

25   experience at $226.  In compensation for delay in payment, we have set the rate for all

26   four students at a current rate of $181.  All four were Certified Law Student

Representatives whose names appeared on the briefs and, in the first appeal, who argued before the Ninth Circuit panel.  Under Ninth Circuit rules, a Certified Law Student Representative has a status and responsibility distinct from that of a mere law student intern, a legal assistant or paralegal, or an ordinary law school clinic participant who provides background support in appellate or other litigation.

For the first appeal in 2013-14, Michelle King and Joy Nissen Beitzel as Certified Student Representatives made valuable contributions to the briefs and both argued before the Ninth Circuit.  At the close of the oral argument, Ninth Circuit Judge William Fletcher said "on behalf of the Court" that "we would like to thank these law students for a very good job." http://www.ca9.uscourts.gov/media/view.php?pk_id=0000012551.

For the second appeal, Bridget Duffus and Katherine Koehler as Certified Law Student Representatives made valuable contributions to the briefs, which on the second appeal included not only the opening and reply briefs but a supplemental brief directed by the Ninth Circuit to be filed shortly before the argument.  At the close of the oral argument, Ninth Circuit Judge Richard Clifton commented that these were "better briefs than a whole lot of briefs we get from people being paid for it." https://www.youtube.com/watch?v=qUs-y1Y2cAo&t=3s.

## (c)   Other Factors Confirm the Reasonableness and Proportionality of the Requested Award

The other factors bearing on the reasonableness of a fee award, as set out in Local Rule 54.2(c)(3) for the District of Arizona, also favor a full recovery here.  The most relevant factors are:

- ***Time and labor required of counsel.***  The hours expended in this case are necessary and proportional to the legal complexity and public importance of the case.  In a recent filing with this Court, Defendant referred to the

1    importance of the matter "and the considerable time that all parties and this

2    very Court put into addressing the issues." Doc. 98 at 1. This litigation has

3    gone through several major stages, including two appeals and two remands,

4    with Sisk being involved in the case for four-and-a-half years.

5    ●    ***The novelty and difficulty of the questions presented.*** In contrast with the

6    typical prisoner case, this matter raised multiple legal questions, ranging from

7    standing to the particular situation of a death row prisoner, implicating two

8    primary constitutional provisions. For the evidentiary hearing and the

9    depositions on the first remand, this Court is familiar with the litigated factual

10    and legal questions. For the appeals, the novelty and difficulty of the legal

11    questions are best illustrated by review of the briefs filed on Nordstrom's

12    behalf and the Ninth Circuit's published opinions. Moreover, while most other

13    circuits have addressed legal mail questions in terms of the First Amendment,

14    the Ninth Circuit accepted Plaintiff's arguments on the merits of his Sixth

15    Amendment claim as well as that he had alleged sufficient prejudice through

16    the chilling of his communications by the prison's practices and policies, a

17    ruling that prompted a lengthy dissent.

18    ●    ***Amount of money, or value of the rights, involved, and the results obtained.***

19    As described by Defendant, "[t]he Ninth Circuit here has issued a brand new

20    rule of constitutional law: page-by-page content review of a prisoner's

21    outgoing legal correspondence is unconstitutional." Doc. 98 at 2. The

22    vindication of such a constitutional right "cannot be valued solely in monetary

23    terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The two

24    appeals resulted in published opinions on the Sixth Amendment and First

25    Amendment rights of a prisoner to confidentiality in correspondence with legal

26    counsel. *See* Ninth Circuit Rule 36-2 (listing among other "criteria for

publication" that the disposition "[i]nvolves a legal or factual issue of unique interest or substantial public importance").  As a further indication of the importance of the questions on the appeal, the State of Arizona took the extraordinary step of seeking rehearing en banc, not just once, but twice.  Not seeking to impose any monetary penalty on a correctional officer or other prison official, Plaintiff forthrightly sought only prospective relief in his complaint to protect confidentiality in attorney-client communications as a fundamental principle of constitutional law and professional responsibility.  By obtaining an injunction, Plaintiff obtained the very relief that he sought.  By obtaining full relief and because of the exceptional public importance of the constitutional rulings, the hours spent and the amount of the fee requested here are reasonable and proportionate.

- *Experience, reputation, and ability of counsel.*  As detailed in David Lane's declaration and discussed above, he is one of the premier civil rights attorneys in the nation, having tried some 200 cases and argued before the Supreme Court of the United States and other federal and state appellate courts.  Lane Aff. ¶¶4-8.  His tenacious representation of Nordstrom in the evidentiary hearing developed the record that set the stage for Nordstrom's ultimate success in the litigation.  As detailed in Sisk's affidavit at ¶¶6-9, in his attached curriculum vitae (Sisk Aff. Exhibit D), and as discussed above, Sisk is an experienced appellate litigator and nationally-prominent legal scholar.

- *The "undesirability" of the case.*  Before Sisk was appointed as pro bono counsel by the Ninth Circuit, Scott Nordstrom had been in the difficult position of appealing pro se from a dismissal of his complaint by the District Court.  Moreover, given that the District Court had also certified that no appeal could be taken in good faith, Doc. 7 at 6, most attorneys would be unwilling to take

the appeal and could expect no compensation for doing so.  In addition as
noted, the typical lawyer regards a prisoner appeal as undesirable because "the
PLRA restricts the hourly rate for attorneys' fees below market."  *Graves*, 633
F. Supp. 2d at 847.  Not surprisingly, until Sisk accepted a pro bono court
appointment in the first appeal, no attorney had expressed any interest.
Likewise, no other attorney with trial court experience had been willing to
undertake representation of Nordstrom on the first remand, until Lane agreed
to step in at the crucial point of the evidentiary hearing.

- ***Awards in similar actions*.**  In *Nadarajah v. Holder*, 569 F.3d 906, 921-22 (9th
Cir. 2009), the Ninth Circuit approved more than 300 hours among three
attorneys for work on a *single* appeal, observing "[t]he case was also complex,
presenting unique statutory and constitutional questions that required a 58-page
brief, warranted an amicus curiae brief, and resulted in a 15-page opinion."  In
*Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287-88 (9th Cir.
2004), the Ninth Circuit approved up to 501.4 hours for an individual appellant
on a *single* complex appeal.  Both of the *Nordstrom v. Ryan* appeals were
likewise complex, with multiple constitutional dimensions and procedural
stages.  The first appeal involved a 60-page opening brief (not including the
addendum), a reply brief, attracted four amicus curiae briefs, and resulted in a
19-page opinion in the Federal Reporter (including the dissent).  The second
appeal involved a 60-page opening brief (not including addendum), a reply
brief, a court-ordered supplemental brief, attracted three amicus curiae briefs,
and resulted in a 10-page opinion in the Federal Reporter.  In this case, there
were also two remands, the first of which involved an evidentiary hearing
before the Court, two depositions, full briefing, and several motions, with a 20-
page published decision by the Court.

1

2      **V.     Recovery for Non-Taxable Expenses/Costs**

3             A prevailing plaintiff also may recover non-taxable costs because such expenses

4      are part of "reasonable attorney's fee" award in Section 1983 litigation.  *See Missouri*

5      *v. Jenkins*, 491 U.S. at 285.  Any costs that would otherwise be normally billed to a

6      fee-paying client are recoverable.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

7             The only non-taxable expenses for which we seek recovery for Sisk and the

8      Certified Law Student Representatives are for airfare, lodging, meals, and related

9      expenses for travel from Minneapolis, Minnesota to San Francisco, California for the

10     two oral arguments before the Ninth Circuit and for airfare, rental car, and meals in

11     traveling from Minneapolis to Phoenix for the oral argument on the remand in District

12     Court.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1015, 1216 (9th Cir. 1986)

13     (awarding costs for travel expenses to appear for argument); *Harris*, 24 F.3d at 19-20

14     (affirming award of expenses for hotel bills and meals).

15            For the first appeal, for three persons and two nights in San Francisco, we

16     expended $2,897.72, including $1,171.34 for airfare, $1,105.35 in lodging, $235.13 in

17     meals, $227.90 in ground transportation, and $158.00 for airport parking back in

18     Minneapolis.  Sisk Aff. ¶¶34-36, Exhs. J through L.

19            For argument in the District Court on remand before the second appeal, Sisk

20     expended $436.17, including $316.20 for airfare (and baggage fee), $71.55 for rental

21     car, and $48.42 for meals.  To conserve resources, he stayed with his mother near

22     Phoenix and thus does not seek any reimbursement for lodging.  Sisk Aff. ¶¶34-36,

23     Exh. J.

24            For the second appeal, for three persons and two nights in San Francisco, we

25     expended $2,820.08, including $1,122.60 for airfare, $1,273.84 in lodging, $325.37 in

26     meals, and $98.27 in ground transportation.  Sisk Aff. ¶¶34-36, Exhs. J & M & N.

1    The only non-taxable expenses for which we seek recovery for Lane are his travel

2    expenses to Phoenix for the evidentiary hearing on the first remand, consisting of

3    $640.20 airfare.  Lane Aff. Exh. C.

4

5    **VI.  Conclusion**

6    For the foregoing reasons and as supported by the attached affidavits,

7    declarations, and other documentation, Plaintiff respectfully requests that this Court

8    award attorney's fees and related non-taxable expenses for Appeals No. 12-15738 and

9    16-15277, and for District Court work on both remands, in the amount of in the

10   amount of **$226,251.12**, broken down as:

11   ● **$41,242.80** (based on $40,602.60 in legal fees and $640.20 in expenses)

12   payable to David A. Lane;

13   ● **$74,217.27** (based on $73,781.10 as two-thirds of fees for Sisk's work and

14   $436.17 in expenses) payable to Gregory C. Sisk; and

15   ● **$110,791.05** (based on $68,182.70 in legal fees for Certified Law Student

16   Representatives; $36,890.55 as one-third of fees for Sisk's work; and $5,717.80 in

17   expenses) payable to the University of St. Thomas.

18

19

20   RESPECTFULLY SUBMITTED this 12th day of December, 2017.

21

22   By ____/s/_____

23   Gregory C. Sisk
     Appellate Clinic
     University of St. Thomas School of Law

24   1000 LaSalle Ave., MSL 400
     Minneapolis, MN  55403

25

26   *Counsel for Plaintiff*
     *Scott D. Nordstrom*

Plaintiff's Motion for Attorney's Fees and Expenses - 17

1

2

## **CERTIFICATE OF SERVICE**

3

4          I hereby certify that on December 12, 2017, I electronically transmitted the

attached document to the Clerk's office using the CM/ECF System for filing and

5    service.

6

7

8

9                                                    /s/

10                                         Gregory C. Sisk
                                           *Attorney for Plaintiff*
11                                         *Scott D. Nordstrom*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff's Motion for Attorney's Fees and Expenses - A